# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CHANGE HEALTHCARE TECHNOLOGIES, LLC, successor in interest to RELAY HEALTH, | ) ) ) ) ) |
| Defendant. | |

Civil Action File No.

_____

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES

Plaintiff Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America ("FME") files this Complaint against Change Healthcare Technologies, LLC, formerly known as Relay Health ("Change") and show this Honorable Court the following:

## NATURE OF THE ACTION

1. FME provides kidney-related medical services to patients at more than 2,000 centers in the United States. FME contracted with Change to: (1) submit the patients' dialysis-related claims to the appropriate insurance payors, under a RelayHealth Services Agreement ("RSA") and through individual work orders submitted on Change's Order Forms; and (2) process payments and other transaction ("Services").

FME and Change also entered into a Health Insurance Portability and Accountability Act Business Associate Agreement ("BAA") on January 2, 2013.

2. On February 21, 2024, Change confirmed publicly that it was the subject of a significant data breach allegedly conducted by hackers known as "ALPHV/Blackcat" ("Blackcat") who gained unauthorized access to Change's networks (the "Data Breach").[1] On February 22, 2024, UnitedHealth Group Inc.—Change's parent company—publicly reported that it determined a cybercriminal had infiltrated some of Change's networks and systems. Change later confirmed "that a substantial quantity of data had been exfiltrated from its environment between February 17, 2024, and February 20, 2024," and that Blackcat had "deploy[ed] ransomware in [Change's] computer system."[2]

3. Immediately after the Data Breach, Change stopped providing Services to FME in breach of the RSA. Change never notified FME about the breach—FME's learned about it through Change's public disclosures—and Change never notified FME that Change would stop providing Services. Change still has not told FME why Change stopped providing Services or the extent to which FME's data was affected.

---

[1] *See Change Healthcare Cyberattack Support*, CHANGE HEALTHCARE https://www.unitedhealthgroup.com/ns/health-data-breach.html. (last visited Feb. 3, 2025) (pdf attached as Ex. 1.)
[2] *Id.*

4. Change's failure to provide the Services to FME is a material breach of the RSA. As a result of Change's contract breaches, FME has suffered—and continues to suffer—multi-million dollars in monetary damages and damages to its business reputation based on interruption to FME's day-to-day business operations. Change has not been responsive or willing to engage with FME about Change's breaches and resulting damages

## THE PARTIES

5. Plaintiff Fresenius Medical Care Holdings, Inc. is a New York corporation with its principal place of business located in Waltham, Massachusetts.

6. Defendant Change Healthcare Technologies, LLC is a Delaware limited liability company. Based on the best available publicly available information, FME alleges Change's members are citizens of Minnesota, Nebraska, and Washington, D.C., thus Change is a citizen of each of those states.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and is between citizens of different states.

8. Venue is proper in the United States District Court for the Northern District of Georgia because the RSA provides that the "non-exclusive venue for all actions arising out of or related in any manner to this RSA or any Order Form, will be in a

federal or state court of competent jurisdiction located in Fulton County, Georgia." RSA § 5.12; *see Int'l Greetings USA, Inc. v. Cammack*, 306 Ga. App. 786, 787 (2010) ("In Georgia, a forum selection clause is prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances.") (internal quotation marks omitted). Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

**A. FME and Change entered binding and enforceable contracts requiring Change to provide services to FME.**

9. On December 28, 2012, FME and Change executed the RSA. The terms of the RSA are incorporated by reference here.

10. The RSA is a valid, binding, and enforceable contract. *See generally* RSA. The RSA was and has been in full force and effect during each of Change's breaches. *See generally* RSA.

11. At all times, FME has and continues to comply with all its obligations under the RSA. *See generally* RSA.

12. The terms of the RSA are unambiguous and require Change to provide FME with the Services. RSA at 1 (reflecting "Solution Schedule 1 (Financial Solutions)" are included under the RSA); RSA at §§ 3.1; RSA at Ex. A (*e.g.*, definitions for

4

Financial Solutions, Processing Services, Services, and Transaction). The Services include these Processing Services:

   a. Processing patient claims;
   b. Processing remittals;
   c. Processing information requests;
   d. Processing patient statements;
   e. Processing collection letters;
   f. Processing print images; and
   g. Processing patient estimation letters.

RSA Ex. A (definition of Transaction).

13. The RSA also requires Change to notify FME of any material modification, discontinuation, or termination of any Services. *E.g.*, RSA §§ 3.2.2, 5.7. Any notice of such a change must be (1) in writing, (2) reference the RSA, and (3) sent via certified mail or commercial carrier. RSA § 5.1.5.

14. Change never provided FME with notice of any discontinuation or termination of any Services as required under the RSA.

15. Further, the RSA has specific requirements if Change sought to modify the RSA. RSA § 5.18. Any change to the RSA or Services must be in "a written document executed by the authorized representatives" of FME and Change. RSA § 5.18.

16. Again, Change did not follow those requirements before it discontinued or terminated the Services.

17. The RSA also required Change to safeguard FME's confidential data. RSA §§ 3.2.4, 5.1.

**B. Each Order Form is a binding and enforceable contract requiring Change to provide Services to FME.**

18. To accomplish the Services under the RSA, Change required FME to submit myriad Order Forms on an ad hoc, ongoing basis. *E.g.*, RSA at 1; RSA § 2.1, 3.1; Exemplar Order Form at 1. The terms of the Order Forms are incorporated by reference here.

19. The Order Forms are valid, binding, and enforceable contracts. *See generally* Exemplar Order Form. The Order Forms were and have been in full force and effect during each of Change's breaches. *See generally* Exemplar Order Form.

20. At all times, FME has and continues to comply with all its obligations under the Order Forms. *See generally* Exemplar Order Form.

21. The terms of the Order Forms are unambiguous and require Change to provide FME with the Services. Exemplar Order Form at 1.

22. As noted above, Change stopped providing FME with the Services.

## C. The BAA is a binding and enforceable contract requiring Change to provide Services to FME.

23. To carry out the Services under the RSA and Order Forms, Change required FME to enter into the BAA. *E.g.*, RSA § 5.9; *see generally* BAA. The terms of the BAA are incorporated by reference here.

24. The BAA is a valid, binding, and enforceable contract. *See generally* BAA. The BAA was and has been in full force and effect during each of Change's breaches. *See generally* BAA.

25. At all times, FME has and continues to comply with all its obligations under the BAA. *See generally* BAA

26. The terms of the BAA are unambiguous and require Change to safeguard and protect protected health information ("PHI") FME provides to Change. BAA §§ 3.1.1–2.

27. The BAA also requires Change to notify FME of any unauthorized access or disclosure of PHI. *E.g.*, BAA §§ 3.2. 3.6.

28. Change failed to notify FME of any unauthorized access to Change's systems or that or that such access would cause disruption to Services provided under the BAA.

## D. Change stopped providing services to FME without any advance notice and without any subsequent notice.

29. On February 21, 2024, Change confirmed the Blackcat hackers breached Change's networks in the Data Breach. Change—through its parent company UnitedHealth Group Inc.—disclosed the Data Breach to the SEC. In the Data Breach, Blackcat gained access to highly sensitive data and information. Upon information and belief, that information included personally identifiable information ("PII"), e.g., payment information, phone numbers, addresses, Social Security numbers, and emails. Blackcat also accessed certain PHI, including medical records, dental records, claims information, and insurance records. Blackcat alleges it exfiltrated more than 6 terabytes of date—including PII, medical records, dental records, claims information, payment information, insurance records, and more for an unknown number of patients—and it encrypted some of Change's network, which made those portions unusable.[3] To date, Change never disclosed exactly what data was affected. Instead, Blackcat issued a statement about what information it had

---

[3] *Massive Ransomware Attack Disrupts US Healthcare: Behind it, ALPHV/BlackCat*, HEIMDAL SECURITY (last updated Nov. 19, 2024), https://heimdalsecurity.com/blog/massive-ransomware-attack-disrupts-us-healthcare-behind-it-alphv-blackcat/ (last visited Feb. 3, 2025) (pdf attached as Ex. 2); Helga Labus, *ALPHV/BlackCat threatens to leak data stolen in Change Healthare cyberattack*, HELP NET SECURITY (Mar. 6, 2024, 7:05 a.m. ET), https://www.helpnetsecurity.com/2024/02/29/alphv-blackcatchange-Healthcare (last visited Feb. 3, 2025).

taken.[4] Change, "reportedly paid $22 million to get a decryptor and to get their data deleted but a copy of the data is still in the hands of the [Blackcat] affiliate who did not receive their share of the payment."[5]

30. While the full impact of the Data Breach remains unknown, the effects to date have been broad in scope and reach. Numerous providers, including FME, have been unable to process claims and other transactions because of Change's breaches under the RSA and BAA.

31. Despite knowing about the Data Breach and notifying the SEC about the breach, and despite its clear obligations under the RSA and BAA, Change never notified FME of the Data Breach. Instead, FME learned of the Data Breach through publicly available sources *after* Change stopped providing FME the Services under the RSA and Work Orders.

32. FME notified Change on April 11, 2024, of its breaches of the RSA. In that notice of default, FME identified the (1) Services Change was required to provide under the RSA, (2) Change's obligations to safeguard patient information under the RSA and BAA, (3) Change's material breaches of those agreements, and (4) the

---

[4] *Id*.
[5] Dissent, *Developing: AlphV allegedly scanned Change Healthcare and its own affiliate*, DATABREACHES.NET (last updated Mar. 4, 2024 at 9:50 p.m.) https://databreaches.net/2024/03/04/developing-alphv-allegedly-scammed-change-healthcare-and-its-own-affiliate/ (last visited Feb. 3, 2025).

damages FME incurred and continued to incur because of Change's refusal to provide the Services. *Id*. Change failed to respond to FME's notice of breach.

33. In a further effort to address Change's breaches and the damages Change caused, FME notified Change again on February 11, 2025, of its breaches of the RSA. Change failed to respond FME's second notice of breach.

34. Change has not addressed—or even acknowledged—Change's breaches of the RSA and FME has continued to suffer monetary harm and damages. For example, the inability to process patient claims and other transactions caused FME to incur additional and unnecessary costs to process claims, required FME to hire additional personnel to process claims, required FME to move to other providers, resulted in unnecessarily delayed and denied claims, and deprived FME the benefit of the services that it paid Change to provide. FME has sustained multi-million-dollar losses because of Change's breaches and other wrongful conduct.

35. FME has retained the undersigned counsel to pursue these claims and is obligated to pay counsel a reasonable fee for its services.

## COUNT I—BREACH OF CONTRACT
### Regarding the RSA, Order Forms, and BAA

36. FME incorporates by reference the facts alleged in Paragraphs 1 through 35 of this Complaint.

37. Change and FME entered into the RSA, the Order Forms, and the BAA, which are valid, enforceable contracts.

38. Change has breached, and continues to breach, those contracts in numerous ways. ***First***, Change has breached the RSA and Order Forms by failing to provide FME the Services and unilaterally modifying those contracts without following the contractually required procedures. Section 3.1 of the RSA provides that Change "will use commercially reasonable efforts to provide to Customer, and Customer will accept, the [Change] Solutions purchased under each Order Form." RSA § 3.1.1. FME purchased Change's Financial Solutions. RSA at 1. Under the RSA, Financial Solutions is defined as Change's "provision of the Processing Services and other [Change] Solutions described in Solution Schedule 1, and any Order Form attendant thereto." RSA, Ex. A at 16. Change's Processing Services is defined as "the Transaction processing Services, and related Subscription Services, described in an applicable Solution Schedule, that [Change] will provide to Customer under an Order Form." RSA, Ex. A at 17. Transaction is defined as "information received from Customer or its agent that is processed by [Change], including, but not limited to, a distinct claim, remit, information request, statement, collection letter, print image, patient estimation letter or other item." RSA, Ex. A at 18. After the Data Breach, Change stopped processing all FME's Transactions, which constitutes a material breach of the RSA. Further, Change failed to provide any notice to FME, which constitutes a separate breach as noted below.

39. The Order Forms also require Change to provide FME with Change's Financial Solutions. *E.g.,* Exemplar Order Form at 1. The Order Forms state that Change's Financial Solutions include Change processing Electronic Claims and Paper Claims and Statements. *E.g.*, Exemplar Order Form, Ex. 1 §§ 2.1–2. That includes FME's Transactions. *E.g*., Exemplar Order Form, Ex. 1 §§ 2.1–2. After the Data Breach, Change stopped processing all FME's Transactions, which constitutes a material breach of the Order Forms.

40. Section 3.2.2 of the RSA provides that "if [Change] materially modifies a [Change] Solution in a way that is adverse to [FME] or otherwise significantly eliminates functionality [FME] was using or intended to use prior to such material modification, [Change] will either offer to provide Customer with a substitute [Change] Solution (from [Change] or a [Change] Affiliate), or proportionately adjust the fees applicable to such [Change] Solution to reflect the adverse impact or loss of functionality, as determined in [Change's] reasonable discretion exercised in good faith." RSA § 3.2.2. Change's refusal to provide FME the Services is a material modification that has and continues to adversely affect FME. Change's refusal to provide FME the Services also significantly eliminated the functionality FME was using. Change never offered FME a substitute or adjusted FME's fees. Change's refusal to provide FME Services constitutes a material breach of the RSA.

41. Section 5.7 of the RSA provides that if Change wishes to "terminate the RSA or any Order form issued under the RSA," Change must provide FME "timely notice." RSA § 5.7.1. Change's refusal to provide FME Services is, effectively, a termination of the RSA and all Order Forms FME has submitted. Change never provided FME notice of those terminations, which constitutes a material breach of the RSA.

42. Section 5.18 of the RSA provides that the "RSA and each Order Form may be modified only by a written document executed by the authorized representatives of both parties." RSA § 5.18. Change's refusal to provide FME Services is a modification of the RSA and the Order Forms. Change and FME never executed any written documents via their authorized representatives related to Change's refusal to provide Services, which constitutes a material breach of the RSA.

43. Change's breaches are willful because Change has chosen not to address or acknowledge the breaches—despite FME's repeated attempts to solicit Change's response.

44. ***Second***, Change breached the RSA because it did not provide FME the contractually required notice about interruptions to the Services or changes to the RSA. Change has breached Section 5.15 of the RSA, which provides that "[a]ll notices relating to the parties' legal rights and remedies under this RSA will be provided in writing and will reference this RSA." RSA § 5.15. Those notices must

13

be sent via "postage prepaid registered or certified U.S. Post mail" or "commercial courier." RSA § 5.15. Change never provided FME with any notice about interruptions to the Services, let alone sent FME any written notices via either method. Change's public statements and SEC filings do not satisfy the RSA's notice requirements. Change's failure to provide FME notice constitutes a material breach of the RSA.

45. There are no provisions in the RSA, the Order Forms, or the BAA that would excuse Change's breaches.

46. Because of Change's breaches, FME has suffered harm resulting in financial damages.

**COUNT II—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**Regarding the RSA, Order Forms, and BAA**

47. FME incorporates by reference the facts alleged in Paragraphs 1 through 35 of this Complaint.

48. The RSA, Order Forms, and BAA are all contracts that impose upon Change a duty of good faith and fair dealing when performing under the contracts.

49. As shown in Count I, Change breached the RSA, Order Forms, and BAA in numerous ways. Change's actions related to those breaches violate Change's duty of good faith and fair dealing.

50. Change agreed to provide FME with the Services and use reasonable and appropriate administrative, physical and technical safeguards to prevent unauthorized access to Change's systems. After the Data Breach, Change made no attempt to acknowledge, address, or cure its breaches under the RSA, Order Forms, and BAA. Instead, Change stopped all Services without any notice.

51. Change's decisions to stop providing services, without prior or subsequent notice to FME was arbitrary and unreasonable. Further, Change did not do everything it could to uphold and accomplish Change's obligations under the RSA, Order Forms, or BAA.

52. Change's arbitrary, unreasonable actions have prevented—and continue to prevent—FME from realizing the benefits of the bargains FME made with Change. FME, accordingly, has suffered damages and will continue to suffer damages because of Change's breaches of the duty of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

A. A jury trial on all breaches in Count I.

B. A jury trial on all breaches in Count II.

C. An award of damages for each breach in Count I—in an amount to be determined by the Court or jury—in favor of Plaintiff.

D. An award of damages for each breach in Count II—in an amount to be determined by the Court or jury—in favor of Plaintiff.

E. If the Court or Jury cannot determine the amount or extent of damages FME suffered under Counts I–II, FME requests an award of nominal damages for each of Change's breaches.

F. Such other and further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Respectfully submitted this 19th day of February 2025.

**HOLLAND & KNIGHT LLP**

*/s/ Peter N. Hall*
Peter N. Hall
State Bar of Georgia No. 141376
peter.hall@hklaw.com
Regions Plaza, Suite 1800
1180 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone: (404) 817-8500

Paul McDermott
(*pro hac vice motion forthcoming*)
Florida Bar No. 855901
paul.mcdermott@hklaw.com
100 North Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500

*Counsel for Fresenius Medical Care Holdings, Inc.*

# **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing was prepared in accordance with N.D. Ga. L.R. 5.1 using Times New Roman 14-point font.

This 19th day of February 2025.

                                             */s/ Peter N. Hall*
                                             Peter N. Hall
                                             Georgia Bar No. 141376